IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 03-cv-00702-MSK-MJW

MARY LOUISE MILHAM,

    Plaintiff,

v.

DANNY PEREZ,

    Defendant.

---

**OPINION AND ORDER GRANTING MOTION FOR AWARD OF ATTORNEY'S FEES**

---

**THIS MATTER** comes before the Court pursuant to the Plaintiff's Motion for Attorney's Fees and Costs **(# 99)**, the Defendant's response **(# 103)**, and the Plaintiff's reply **(# 109)**; and the Plaintiff's Motion for Hearing **(# 112)**.

## **BACKGROUND**

This matter arises from an altercation between the Plaintiff and two police officers at a bar in Denver, Colorado. On March 24, 2003, the Plaintiff filed a Complaint naming as Defendants the bar and the two police officers, in both their individual and official capacities, and asserting seven causes of action: (i) unlawful search in violation of 42 U.S.C. § 1983 against the police officers; (ii) excessive force under § 1983 against the police officers; (iii) assault against the bar; (iv) battery against the bar; (v) malicious prosecution under § 1983 against the police officers; (vi) vindictive prosecution under § 1983 against the police officers; and (vii)

outrageous conduct against the bar. The Plaintiff prayed for unspecified economic, compensatory, and punitive damages.

On October 15, 2004, the Plaintiff stipulated **(# 65)** to dismiss her claims against one of the police officers, with each side to pay its own costs and fees. On December 20, 2004, the Court granted **(# 82)** the bar's motion for summary judgment on all claims asserted against it, leaving Defendant Perez as the only remaining Defendant in the case.

The matter was tried to a jury over five days in January 2005. During trial, the Plaintiff withdrew the vindictive prosecution claim **(# 94)**, and the Court dismissed the malicious prosecution claim at the close of the Plaintiff's case pursuant to Fed. R. Civ. P. 50 **(# 94)**. The remaining claims– false arrest and excessive force– were submitted to the jury. The jury returned a verdict in favor of the Defendant on the false arrest claim, and in favor of the Plaintiff on the excessive force claim, awarding the Plaintiff $ 10,000 in damages **(# 95)**. The jury also found that the Plaintiff had not established the required level of reckless disregard to support an award of punitive damages.

The Plaintiff then moved for an award of attorney's fees as a prevailing party pursuant to 42 U.S.C. § 1988. The Plaintiff's counsel calculated the time spent on the case by several attorneys to be in excess of 330 hours, billable at rates of between $ 150 and $ 300 per hour, as well as approximately 58 hours of paralegal time at $ 80 per hour, for a total of $ 95,390 in fees, plus an additional $ 3,591 in various costs. The Plaintiff emphasizes in her motion that these calculations exclude time spent on matters relating solely to the claims against the bar.

In response, the Defendant does not dispute that the Plaintiff is a prevailing party or that she is entitled to an award of some fees. However, he contends that, in light of the Plaintiff's

limited success, her fee award should be reduced appropriately. In addition, he challenges the reasonableness of the Plaintiff's claimed hourly rate and identifies numerous billing entries by Plaintiff's counsel to which he objects.

In reply, the Plaintiff asserts that no reduction should be made for partial success as the dismissed claims were inextricably intertwined with the excessive force claim on which she prevailed. The Plaintiff did acknowledge that certain billing entries challenged by the Defendant were inappropriate, consenting to a reduction of approximately 25 hours of attorney time worth approximately $ 7,000.

## ANALYSIS

### A. Standard of review

When considering a claim for attorney's fees under 42 U.S.C. § 1988, the moving party bears the burden of proving her entitlement to an award, as well as the appropriateness of the hours expended and the hourly rate sought. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Once the Plaintiff carries her burden of establishing an appropriate amount of hours spent and a reasonable fee, those numbers are used to generate a "lodestar" amount. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar is a presumptively reasonable fee award, taking into account most of the factors that bear on the reasonableness of the award, and thus, adjustments to the lodestar should only be made in rare and exceptional cases. *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 564-65 (1986).

### B. Reasonable hours

The Defendant raises two issues with regard to the number of hours claimed by the Plaintiff: that the total number of hours claimed as reasonable should be reduced in light of the

Plaintiff's limited success,[1] and that certain billing entries are unnecessary and should be rejected.

The Court's analysis of the first question is framed largely by two decisions from the United States Supreme Court. In *Hensley*, the Court observed that the extent of the results obtained by the plaintiff was an "important factor" in the fee calculation. 461 U.S. at 424. In situations where a plaintiff achieved less than total success, *Hensley* suggests a two-part inquiry to determine whether to accept the total number of hours worked as reasonable: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* With regard to the first inquiry, work on claims that are inextricably linked or which arise from the same core facts should be compensable even though only some of the legal theories applied to those facts were successful. *Id.* By contrast, where separate claims could logically have been brought as separate lawsuits, it would be inappropriate to award fees on the unsuccessful claims. *Id.* With regard to the second inquiry, *Hensley* suggests that "[w]hen a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," even though some of the theories urged by that plaintiff were

---

[1]There appears to be some confusion among courts as to whether partial success is a factor to be weighed in calculating the reasonable hours number to be used in the lodestar in the first place, *see e.g. Hensley* at 435 ("the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation"), or whether the a reduction should be taken after the lodestar is calculated. *See Nephew v. City of Aurora*, 830 F.2d 1547, 1549 (10th Cir. 1987) ("Once determined, however, the [lodestar] figure can be adjusted upward or downward, according to certain factors, one of the most important of which is the "results obtained."), *but compare Delaware Valley, supra* (adjustments to lodestar will be "rare"). Because the outcome of this question does not materially affect the calculation, the Court will merely assume that success is a factor to be assessed prior to making the lodestar calculation.

rejected. 461 U.S. at 435. By contrast, if the plaintiff "achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436.

The Court revisited the issue again three years later in *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). There, the Court rejected an argument that an attorney's fee award in a civil rights case should not exceed some precise mathematical multiplier of the amount of damages awarded. *Id.* Although the amount awarded is "certainly relevant" to the analysis, the Court cautioned that it is only one of several factors to be considered. *Id.* However, the Court noted that "where recovery of private damages is the purpose of a civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Id.* at 585.

Not surprisingly, the parties here differ even as to their characterizations of the Plaintiff's success. In the Defendant's eyes, the Plaintiff raised a total of 11 claims in the Complaint, yet succeeded on only one. In the Plaintiff's eyes, the jury's conclusion that the Defendant had subjected her to excessive force was a vindication, not just in awarding her money, but because "the whole world saw that Danny Perez is a brutal police officer." *Docket* # 111. The Court finds that the actual extent of the Plaintiff's success is somewhere in between.

Putting aside the claims against the bar, which the parties agree should not be considered in setting the lodestar, the Plaintiff raised four claims, each against two police officers. Three of those claims related to the sufficiency of the evidence warranting the Plaintiff's arrest and criminal prosecution (false arrest, malicious prosecution, vindictive prosecution), while the fourth related to the degree of force used upon her in effectuating that arrest. In the Court's

view, the two types of claims are unrelated for purposes of the *Hensley* analysis. Although they arise from the same basic background facts– that the Plaintiff and friends were involved in an incident at the bar– the two types of claims do not share common factual elements or legal questions. Whether the police had probable cause to arrest and prosecute the Plaintiff does not bear on the question of whether her arrest was effectuated with excessive force and *vice-versa*. In these circumstances it would be unjust to require the Defendant to bear the costs of the Plaintiff's unsuccessful claims related to the validity of her arrest and prosecution merely because he used excessive force in making hat arrest. Thus, it is appropriate to reduce the Plaintiff's claimed hours to reflect her lack of success on these claims.[2]

Regarding the second *Hensley* inquiry, however, the Court finds that the Plaintiff's success on the excessive force claim was sufficient to warrant an award of all hours reasonably expended by her counsel pursuing that claim. The Court's recollection of the evidence was that the jury's award of $ 10,000 effectively represented the amount the Plaintiff testified she paid in medical expenses. In short, the jury awarded the Plaintiff full economic damages, but no compensatory or punitive damages. This is substantially less than the full relief sought by the Plaintiff, yet the jury's award reflects more than just a token amount. Although the Court does not share the Plaintiff' overstated opinion that the verdict brands the Defendant as a "brutal police officer," the jury's award does reflect that the Plaintiff was harmed in more than an

---

[2]In addition, the Plaintiff asserted claims against both police officers, only to drop the claims against the other officer prior to trial. An argument could be made that time spent developing claims against the dismissed officer should not be chargeable to the Defendant. At the same time, the evidence reflected that both officers participated jointly in the incident, and the Plaintiff would likely have taken much of the same discovery against the dismissed officer regardless of whether he was a party to the action or a mere witness. Accordingly, no reduction will be made with regard to the Plaintiff's lack of success against the other police officer.

inconsequential way, and that the Defendant was culpable for that harm.  Thus, the Plaintiff is entitled to an award that fully reflects her counsel's time spent on the excessive force claim.

The Plaintiff's counsel's billing records are not so granular that the Court is able to make a precise finding as to what times were spent developing what claims. Because the Court cannot identify certain specific hours that should be eliminated under these circumstances, it is permissible for the Court to "simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436-37.  In the Court's view, a 50% reduction in the hours claimed by the Plaintiff is appropriate to eliminate those hours relating to development of the false arrest and related prosecution claims.  Although numerically, those claims outnumber the excessive force claim by three-to-one, a purely proportional reduction is not equitable.  All three of the false arrest and prosecution claims turn on the same common nucleus of fact, warranting their treatment as a single entity.  However, this grouping of claims and the excessive force claim did not require the same degree of evidentiary development.  The false arrest and prosecution claims required examination of the Plaintiff's interaction with the police officers throughout the course of the incident, whereas the excessive force claim focused on a single moment in which the Plaintiff's arm was broken.  Numerous witnesses were necessary to develop the facts regarding the Plaintiff's various verbal interactions with the police that resulted in her arrest and prosecution, while only a handful of witnesses were necessary to develop precisely what occurred in the instant of her physical injury.  Thus, it might even be appropriate to reduce the Plaintiff's hours by more than 50%, as the false arrest and prosecution claims certainly required more extensive case development and presentation than did the excessive force claim.  At the same time, the Court is cognizant of the fact that some development of the background facts and

circumstances of the incident would be necessary, even if the excessive force claim were the only claim presented.

Based on its consideration of all of the relevant facts and circumstances, the Court finds that a reduction of 50% fairly compensates the Plaintiff for the hours spent on the excessive force claim,[3] and that no further reduction of those hours is necessary to reflect her partial success on that claim.

Next, the Court turns to whether the particular entries challenged by the Defendant are appropriate. The Defendant identifies five categories of objectionable entries: (i) hours claimed by the Plaintiff's counsel for his representation of the Plaintiff in her criminal proceedings; (ii) time related to preparing a Notice of Claim, as no tort claims were asserted against the Defendant; (iii) entries related to inter-office communications; (iv) entries relating to the claims against the bar; and (v) entries with insufficiently specific descriptions of work performed; and (iv) duplicative entries where the presence of multiple counsel was unnecessary. The Court agrees in part with the Defendant, in that some of the categories– or, at least, some of the particular entries found within certain categories– should not be awarded.

For example, the Defendant is correct that none of the time spent by the Plaintiff's counsel defending the Plaintiff against the criminal charges brought against her is reasonably necessary to the excessive force claim on which she ultimately prevailed.[4] Although the Defendant is liberal in his assessment of which hours fall into this category, the Court finds that at least 12 hours of time, billed between May 1, 2002 and August 14, 2002, should be excluded

---

[3]For similar reasons, the Court will also reduce the claimed paralegal hours by 50%.

[4]The Plaintiff appears to agree, acknowledging in her reply that some, but not all of the hours identified by the Defendant as relating to criminal defense should be eliminated.

on this ground.  The Court also agrees that the 1.2 hours billed for preparation of a Notice of Claim was unnecessary, as no such notice is required for the claims that were ultimately filed against the Defendant.

The parties appear to agree that the Plaintiff's initial claim for fees included numerous time entries relating solely to the claims against the bar.  In her reply, the Plaintiff concedes that some 21.7 hours of her counsel's time contained in her initial request should be omitted, and the Court will omit those hours from the lodestar.  In addition, the Court notes several other entries challenged by the Defendant that appear to relate solely to the claims against the bar; the Plaintiff has neither conceded nor defended these entries.  *See e.g.* entries on 6/30/03; 12/31/03; 1/15/04; 3/8/04; 4/13/04; 7/20/04; 8/12/04; 8/17/04, and others.  These entries account for at least 6 hours of time that should be excluded.

The Court is not prepared to say that interoffice consultations between attorneys are *per se* unreasonable, nor that any of the entries challenged on this point should necessarily be excluded.  Thus, the remaining two contentions are that certain entries have inadequate descriptions, or are clearly duplicative or are otherwise excessive.  Without engaging in a line-by-line analysis, it is sufficient for the Court to find that some of these contentions have merit, *see e.g.* 8/21/03 (1.4 hours for "reviewed Judge Krieger's trial preparation order; discussed with my paralegal," excessive); 8/28/03 (2.4 hours for "preparation of Plaintiff's first set of interrogatories to and RFP to defendant police officers," where Defendant contends, without contradiction, that no such interrogatories were ever propounded); 8/22/03 (1.8 hours for preparation of plaintiff's interrogatories, see above); and 11/5/03 and 1/22/04 (1.5 hours for

preparation of medical releases, excessive), and others. The Court estimates that these account for at least 8 additional hours of impermissible time.

With these findings, the Court can now begin to assemble the first component of the lodestar analysis. In her initial motion, the Plaintiff requested a total of approximately 335 hours of attorney time. Subtracting the approximately 49 hours discussed above (including time entries conceded by the Plaintiff) yields a total of 286 hours reasonably spent pursuing the four § 1983 claims. As noted above, the Court reduces that figure by 50% to reflect lack of success on the false arrest and prosecution claims, yielding 143 hours of attorney time to be calculated in the lodestar, plus 29 hours of paralegal time (the original 57.7 hour figure, reduced by 50%).

### C. Reasonable rate

The Defendant also objects to the hourly rates claimed by the Plaintiff, which are $ 300 for partners, $ 210 for senior associates, $ 150 for associates, and $ 80 for paralegals. The Defendant contends that corresponding rates in her firm are $ 145 for partners, $ 115 for associates, and $ 60 for paralegals. Notably, the Plaintiff offers not only her own counsel's affidavit attesting to the reasonableness of these rates, but also that of an independent attorney who has testified as an expert in other cases as to the reasonable market rates for attorneys in civil rights actions in the Denver area. By contrast, the Defendant offers only his counsel's affidavit. Moreover, the Defendant's counsel notes that her rates are set pursuant to a contract with the City and County of Denver. The Court is well aware that governmental entities are often able to negotiate reduced hourly rates for legal representation; in exchange, selected law firms receive a steady flow of work that is (usually) promptly paid-for, making the loss of revenue from reduced rates economically justifiable. This explanation may account for part of

the disparity between the rates charged by the Plaintiff and Defense counsel. In any event, the Court finds that the Plaintiff has carried her burden of establishing that the hourly rates she requests reflect prevailing rates in the Denver civil rights legal community.

### D. Calculating the lodestar

The Court then turns to the calculation of the lodestar. Although the Plaintiff provided a summary table of the hours claimed at each billing rate, the Court's rejection of certain billing entries and general reduction of hours for the arrest-related claims complicates the math. Because the Court has made both an across-the-board reduction of attorney time to account for partial success and certain specific excisions of particular billing entries, reconstruction of the lodestar on an attorney-by-attorney basis is not practical. Instead, the Court will calculate a single weighted and blended hourly rate which reflects the approximate proportions of time spent by attorneys at each billing rate in the Plaintiff's initial request. This rate, obtained by multiplying the original hours and rates sought by the Plaintiff for her attorneys' time, then dividing that total by the total number of attorney hours sought, yields a weighted blended rate of $ 270 per hour for attorney time. Multiplied by the 143 hours of attorney time this Court finds as reasonable, this rate yields $ 38,610. Paralegal time (29 hours at $ 80 per hour) adds an additional $ 2,320, yielding a lodestar amount of $ 40,930. The parties have not argued for modifications to the lodestar amount based on extraordinary circumstances, and thus, the Court finds that the Plaintiff is entitled to a reasonable attorney's fee of $ 40,930.

### E. Costs

The Plaintiff's motion also requests $ 3,591.34 in costs. Subsequent to the motion, the Plaintiff filed a Bill of Costs with the Clerk of the Court seeking $ 3,613.34 in costs.[5] On February 23, 2005, the Clerk of the Court taxed $ 314 in costs. The Plaintiff did not file a request for review of the Clerk's taxing, and the time for doing so has expired. The Court will not consider the instant Motion or reply as requesting review of the Clerk's taxing, as such filings do not specifically identify the grounds for any objections to the costs taxed by the Clerk. Accordingly, the Court will not direct the payment of any additional costs.

### F. Request for hearing

The Court finds that the issues have been fully presented in the parties' briefs. The Plaintiff's Motion for Hearing does not assert that a hearing is necessary to present new information not included in the briefs; to the contrary, the Plaintiff requests a hearing "so that any questions or issues in need of resolution can be litigated and this matter can be concluded." In short, it appears that the Plaintiff's request is made to stimulate a ruling by the Court, not to present any novel evidence or argument. Accordingly, no hearing is appropriate. *See Robinson*, 160 F.3d at 1286.

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Attorney's Fees and Costs **(# 99)** is **GRANTED IN PART**, insofar as the Court finds that Plaintiff is a prevailing party under 42 U.S.C. § 1988 and is entitled to a reasonable attorney's fee of $ 40,930, and **DENIED IN PART**,

---

[5]The Plaintiff's Motion does not explain the disparity between these two figures, but expressly states that the costs sought in the motion are the same as those claimed in the Bill of Costs.

insofar as no additional fees or costs are granted.  The Judgment **(# 97)** shall be **DEEMED AMENDED** to reflect the award of attorney's fees in the amount of $40,930.

Dated this 11th day of August, 2005

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Judge